IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MIKE ARENDALE,

    Plaintiff,

v.      No. 05-2190 B

CITY OF MEMPHIS,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE
_____

INTRODUCTION

This lawsuit has been brought by the Plaintiff, Mike Arendale, against his employer, the Defendant, City of Memphis, Tennessee (the "City"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et seq.; 42 U.S.C. §§ 1981 and 1983; and the Tennessee Human Rights Act (the "THRA"), Tennessee Code Annotated § 4-21-101 et seq. The Defendant seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure as to all claims.

STANDARD OF REVIEW

Rule 56© provides that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56©; see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir.

1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  The "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS AND PROCEDURAL BACKGROUND

Arendale, who is white, has worked as a police officer for the City since 1990. (Am. Compl. at ¶¶ 1, 7)  He bid for a transfer to Memphis' northeast precinct, which was awarded to him on August 3, 2002.  (Dep. of Mike Arendale ("Arendale Dep.") at 48-49)  The reason for the bid was

that the work at the northeast facility was less stressful than other precincts in the city. (Arendale Dep. at 37-38) During the majority of the time the Plaintiff worked at that precinct, he was supervised by Lt. Andre Cox, who is black. (Arendale Dep. at 58-59) At that time, Major Danny Cooper was the acting precinct commander and the deputy chief of the police department was M.J. Wright. (Dep. of Danny Cooper ("Cooper Dep.") at 8, 10; Arendale Dep. Ex. 14) Both Cooper and Wright are Caucasian. (Arendale Dep. at 57, 141)

The Plaintiff has alleged that Cox called him into his office on a weekly basis and criticized him for completing accident reports improperly, even though, according to Arendale, there was nothing wrong with them. Apparently, Cox, who had a reputation for being a stickler for the rules, frequently took issue with reports prepared by officers assigned to the precinct, whether black or white, and was aware that his insistence that they be correct was not particularly popular. (Dep. of Lt. Andre Cox ("Cox Dep.") at 92-95)

On February 20, 2004, Arendale filed a charge with the Equal Employment Opportunity Commission (the "EEOC") based on race and age, alleging that, in May and June of 2003, Cox assigned the Plaintiff to the "extra board" for an extended period, accused Arendale of acting irresponsibly while guarding a crime scene and for leaving another crime scene unprotected, and for leaving a ward. Two months later, on April 15, 2004, the Plaintiff was working the front desk at the northeast precinct. It is undisputed that the desk officer is responsible for precinct security. The desk procedures, mounted on the wall behind the desk, require the officer working that post to be "aware of who is at the location," "to monitor any visitors" and not to "allow visitors in unauthorized areas." (Arendale Dep. Ex. 10) A retired police officer, Charles Allred, entered the station while Arendale was on the telephone. He asked to look at some old police pictures on the wall while he

waited. Arendale told him that would be fine. (Arendale Dep. at 97-98, 100) According to the Plaintiff,

> I caught some motion coming from my left side and I looked up and it was Lieutenant Cox coming. And he said in just a hostile manner, is that man down there with you? I said, no, sir. He said, well, who is he? I said, he's a retired police officer, he's here to do a report and he asked if he could look at the pictures on the wall while I finished this report and I said okay. He said, has anybody ever told you about letting people go back there? I said, no, sir. I said, he's a retired police officer. I said, you know, what's the big deal? Well, I want you to write me a memo on what he is doing back there. Well, at that specific moment, that was about the most ridiculous thing I had ever heard in my life, and I am on the phone trying to take a report. I said, Lieutenant Cox . . . I don't have time to write you a memo for that.

(Arendale Dep. at 98-99) The Plaintiff never did write the memo for Cox because he believed he did not violate City policy.

Arendale does not dispute that he was visibly upset and that his face was red following the encounter. (Cooper Dep. at 53-54) That same day, the Plaintiff was removed from desk duty and reassigned to the field. (Cox Dep. at 163-64) Cox noticed, however, that Arendale did not have his gun belt and equipment necessary for field duty with him. (Cox Dep. at 163-64). When the Plaintiff advised that he had left his equipment at home and that it would take him over an hour to retrieve it, Cooper instructed another supervisor, Major Williams, to send Arendale home in order to calm down. (Cooper Dep. at 60-61; Dep. of Major Glenn Williams ("Williams Dep.") at 16) The Plaintiff went from the station to the union hall in order to speak with the union president, who directed him to write a memo regarding the incident. (Arendale Dep. at 111)

A formal statement of charges was issued by Cox on April 21, 2004, charging the Plaintiff with neglect of duty for failure to have his equipment in place and insubordination arising from the exchange at the desk on April 15. (Cox Dep. Ex. 3) In an internal memo to Cooper dated May 5, 2004, Williams related that he had spoken with Arendale on April 28, 2004 and that the Plaintiff told

4

him "he was insubordinate towards Lt. Cox because he was tired of being harassed by him." (Williams Dep. Ex. 2)  Arendale does not directly deny that he made the statement, offering only that "any time [Cox] came up to [him] it probably wasn't going to be good, something was wrong." (Arendale Dep. 98-99)

A hearing was conducted on June 28, 2004, at which Cooper sat as hearing officer.  The hearing was also attended by Tommy Turner, who acted as Arendale's representative, and Williams.  The hearing proceeded with Cox standing by in another room at Turner's request.  (Arendale Dep., Ex. 13)  Upon hearing the evidence, Cooper sustained the charges and suspended Arendale for two days for the insubordination charge and eight days for neglect of duty.  (Arendale Dep. Ex. 13)  With respect to the insubordination charge, Cooper concluded that

> there was simply no excuse for Officer Arendale's language and outburst at Lt. Cox.  I had observed Officer Arendale when I briefly stepped out of the comstat meeting, his anger showed on his face and he was so upset that he was in no condition to work at the desk or in the field.
>
> . . . some of the things that Officer Arendale was upset about . . . were administrative decisions or matter of policy and was not because Lt. Cox was "picking on him." . . .
>
> The desk rules are clearly posted and state that officers working the desk will be professional and attentive.  They will be aware of who is at the location, whether it is visitors, or officers and will monitor any visitors and will not allow visitors in unauthorized areas.  It would certainly have been acceptable to allow a retired police officer to tour the building as long as the desk officer was aware of his identity and location.  If Officer Arendale had spoken to the man and knew his identity, he should have told this to Lt. Cox when he was asked.

(Arendale Dep. Ex. 13)

The Plaintiff took advantage of the internal appeals process and an appeals hearing was conducted on September 17, 2004 before Chief Mary Wright.  (Arendale Dep., Ex. 14)  At the hearing, the Plaintiff admitted telling Cox he would not write the memo and "indicating that a memo

5

was not necessary." (Arendale Dep. Ex. 14) Wright sustained both charges but reduced the suspensions to one day for neglect of duty and three days for insubordination. The appeals officer also required Arendale to attend an anger management class based on the insubordination charge. (Arendale Dep. Ex. 14) The Plaintiff thereafter spoke with a captain about a temporary assignment to another precinct. Robertson located a position at Memphis's east precinct, but Arendale decided to decline it. (Arendale Dep. at 118-20)

When the Plaintiff returned to work on April 26, 2004 after taking some time off for an illness, he was assigned to a different ward within the northeast precinct--ward 822. (Arendale Dep. at 122) Arendale had informed his superiors that he was too old and had too much seniority to be assigned to a ward with a high crime rate such as ward 822. On May 1, 2004, Williams permitted Arendale to move to ward 825, where he stayed for approximately one year. (Arendale Dep. at 131, 138; Williams Dep. at 28, Ex. 2)

On April 21, 2004, the Plaintiff filed another EEOC charge, claiming the April 15 incident was in retaliation on the part of Cox for the February 20, 2004 EEOC complaint. (Arendale Dep. at 156-57, Ex. 20-21) He filed an amended charge on July 1, 2004 based on the suspensions. (Arendale Dep. at 160-62, Ex. 22-23)

The Plaintiff has alleged in this action, filed March 10, 2005, disparate treatment, a racially hostile work environment and retaliation in violation of § 1981; violation of his equal protection rights under the Fourteenth Amendment pursuant to § 1983; violation of the THRA for retaliation and for failure to alleviate the hostile work environment; and retaliation under Title VII. He also seeks punitive damages against the City.

## LAW AND ANALYSIS OF PLAINTIFF'S CLAIMS

6

> Section 1981 provides in pertinent part that
>
> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> © Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981. "Although § 1981 confers certain rights, the statute itself does not provide a cause of action for race discrimination." Malone v. Shelby County Gov't, No. 04-2810, 2005 WL 2114053, at *2 (W.D. Tenn. Aug. 30, 2005). In Jett v. Dallas Independent School District, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court held that when a state actor violates an individual's rights under § 1981, § 1983 provides the exclusive remedy. That is, "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Jett, 491 U.S. at 735-36, 109 S.Ct. at 2723. Accordingly, under Jett, a suit against a municipality for a violation of rights conferred under § 1981 must be brought pursuant to § 1983 and considered pursuant to § 1983 precedent. Id., 109 S.Ct. at 2723.

Following the enactment of § 101 of the Civil Rights Act of 1991, which added subsection

© to § 1981, the question arose among the circuits whether the new section overruled Jett and, therefore, permitted direct causes of action against state actors for violations of § 1981. See Powell v. City of Pittsfield, 143 F.Supp.2d 94, 111 (D. Mass. 2001) (recognizing the split in the circuits and analyzing opposing views). While the Sixth Circuit has not weighed in on the issue, at least two district courts from this Circuit have in recent decisions rejected the notion that Jett is no longer good law. See Baker v. Shelby County Gov't, No. 05-2798 B, 2006 WL 2927687, at *2 (W.D. Tenn. Oct. 11, 2006) ("a suit for a violation of rights conferred under § 1981 must be brought pursuant to § 1983"); Hayes v. City of Memphis Police Dep't, No. 05-2230 DV, 2006 WL 2882682, at *4 (W.D. Tenn. Oct. 6, 2006) (holding plaintiff could not state a claim against the defendant municipality under § 1981 because he had no direct remedy under the statute, citing Jett); Lowery v. City of Cleveland, No. 1:05 CV 96, 2006 WL 2010837, at *3-4 (N.D. Ohio July 17, 2006) (recognizing split in the circuits and noting that Sixth Circuit has not ruled; court assumed Jett had not been superseded); Malone, 2005 WL 2114053, at *2 (§ 1983 provides the exclusive remedy for violation of rights guaranteed by § 1981, relying on Jett). In making its determination, the court in Malone found persuasive opinions from the Eighth and Eleventh Circuits: Butts v. County of Volusia, 222 F.3d 891 (11th Cir. 2000) and Artis v. Francis Howell North Band Booster Association, Inc., 161 F.3d 1178 (8th Cir. 1998). In Butts, the court found that "[n]othing in the 1991 amendment to § 1981 evince[d] Congress' desire to alter the Supreme Court's conclusion in Jett," and noted that the amendment made "clear that the section creates a right that private or state actors may violate but does not itself create a remedy for that violation." Butts, 222 F.3d at 894. Rather, the amendment was intended to codify the Supreme Court's decision in Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which held that § 1981 protects against private discrimination as well

as discrimination by state actors. Id. (citing H.R.Rep. No. 102-40(I), at 92 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 630; H.R.Rep. No. 102-40(II), at 37 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 731). The court in Artis reached a similar conclusion. See Artis, 161 F.3d at 1181.

As the Sixth Circuit has not ruled that Jett has been superceded by the 1991 amendments, this Court agrees with those decisions from this Circuit finding that § 1981 claims must still be brought pursuant to § 1983. Consequently, the Plaintiff must, and he has conceded as much in his response to the motion, "show that the violation of his [rights] protected by § 1981 was caused by a custom or policy within the meaning of [Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)] and subsequent cases." See Jett, 491 U.S. at 735-36, 109 S.Ct. at 2723.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001).

Local governments such as the City are considered "persons" for purposes of § 1983. Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000). This does not mean, however, that municipalities are "liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir.

9

1993)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694, 98 S.Ct. at 2037.  Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing Monell, 436 U.S. at 694, 98 S.Ct. at 2027); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986); and City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)).

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (citing Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36).

> A "custom" for purposes of Monell liability must be so permanent and well settled as to constitute a custom or usage with the force of law.  In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy.  It must reflect a course of action deliberately chosen from among various alternatives.  In short, a "custom" is a "legal institution" not memorialized by written law.

Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-08 (6th Cir. 1996) (internal quotation marks and citations omitted).  A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim.  Conclusory allegations will not lie. Culberson v. Doan, 125 F.Supp.2d 252, 263-64 (S.D. Ohio 2000).  "Municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality." Miller v. Calhoun County, 408 F.3d 803, 813 (6th Cir. 2005) (citing Pembaur).

> However, the municipality is liable for an official's unconstitutional action only when the official is the one who has the final authority to establish municipal policy with

10

> respect to the action ordered. Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.

Weems v. City of Columbus, Ohio, No. 2:05-CV-87, 2006 WL 2640636, at *5 (S.D. Ohio Sept. 13, 2006) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Pembaur, 475 U.S. at 481).

It is not enough, however, for a § 1983 plaintiff to identify conduct attributable to a municipality. Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (emphasis in original). Thus, to recover, a plaintiff

> must show that his civil rights were violated pursuant to and as a direct result of the [municipality's] official policy or custom. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused his constitutional violation.

Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001) (internal citations omitted).

Cases involving an "inaction" theory based upon the municipality's alleged failure to investigate and act on complaints require the plaintiff to demonstrate:

> (1) the existence of a clear and persistent pattern of [unconstitutional activity];
>
> (2) notice or constructive notice on the part of [officials];
>
> (3) [officials'] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [officials'] custom was the "moving force" or direct causal link in the constitutional deprivation.

11

Doe, 103 F.3d at 508; Weaver v. Tipton County, Tenn., 41 F.Supp.2d 779, 789 (W.D. Tenn. 1999). The evidence must show that "the need to act is so obvious that the [officials'] 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [plaintiff's] constitutional rights." Doe, 103 F.3d at 508 (citing Canton, 489 U.S. at 389, 109 S.Ct. at 1205).  A plaintiff "must show prior instances of unconstitutional conduct demonstrating" that the municipality has "ignored a history of abuse" and was "clearly on notice" that its procedures in a particular area were deficient and that such deficiencies could likely lead to harm. Fisher v. Harden, 398 F.3d 837, 849 (6th Cir.), cert. denied, ___ U.S. ___, 126 S.Ct. 828, 163 L.Ed.2d 706 (2005).  "Deliberate indifference is a stringent standard of fault." Id. (citation omitted).

      The City submits that Arendale has failed to establish a policy or custom on the part of the municipality necessary to impose liability under § 1983.  Clearly, the municipality cannot be held liable for the actions of its employees under a theory of *respondeat superior*.  As the cited case law indicates, the act must have been attributable to the City itself.  The Plaintiff does not contend in his response to the instant motion that the municipality had a custom or policy of discriminating against white police officers.  Nor does he argue that the City is liable based on the acts of Cox.  Rather, the Plaintiff avers that Cooper, who was the acting inspector at the northeast precinct, was charged with the responsibility to review complaints of discrimination and that his callous disregard for Arendale's rights may be said to represent official municipal policy giving rise to liability. Specifically, the Plaintiff maintains that Cooper did nothing about his complaints that Cox had wrongfully reassigned him out of ward 828 or had discriminated against him on the basis of race, and did not find in his favor concerning the events of April 15, 2004.

      According to Arendale's deposition testimony, when he complained to Cooper about the

reassignment, Cooper informed him he had nothing to do with such decisions, which were left instead to the various lieutenants. (Arendale Dep. at 90) Cooper acted as a commander at the northeast precinct and, in that capacity, performed administrative tasks, planning, in-service training, and filled in for the inspector when he was out. (Cooper Dep. at 10) Based on the facts before the Court, the Court finds that the Plaintiff has failed to demonstrate that Cooper was the final policymaker for the City such that his actions in disciplining the Plaintiff could have formed the basis of § 1983 liability on the part of the municipality. Indeed, the fact that his decision was appealed and altered by Chief Wright starkly evidences that Cooper's decision was not "final and unreviewable" and was instead "constrained by the official policies of superior officials." See Weems, 2006 WL 2640636, at *5. As the Plaintiff has failed to establish municipal liability, summary judgment is GRANTED on his claims under § 1983.[1]

The City further contends that the Plaintiff cannot sustain a claim of retaliation for filing an EEOC charge under § 1983. As Arendale concedes in his response to the motion that his opponent's position is correct, this retaliation claim is DISMISSED. See Morris v. Oldham County Fiscal Ct., 201 F.3d 784, 794-95 (6th Cir. 2000), reh'g & suggestion for reh'g en banc denied (Mar. 3, 2000) ("where the plaintiff asserts that [he] has been retaliated against for filing a complaint under Title VII, [his] sole federal remedy is the cause of action provided for under Title VII").

The Court next moves to the Defendant's motion for summary judgment on Arendale's retaliation claims under Title VII and the THRA. The THRA claim is to be analyzed in the same

---

[1]Based on its finding that Arendale has failed to show municipal liability, the Court need not consider the remaining prong of the § 1983 claim--the existence of a constitutional violation-- or any other claim alleged by the Plaintiff under § 1981 pursuant to § 1983. Moreover, the Court need not decide whether certain § 1983 claims were time-barred.

manner as the Title VII claim. As the Tennessee Supreme Court has noted, "[a]lthough the language differs slightly, it is clear that the legislature intended the THRA to be coextensive with federal law. We, therefore, may look to federal interpretation of Title VII for guidance in enforcing our own anti-discrimination statute." Phillips v. Interstate Hotels Corp. No. L07, 974 S.W.2d 680, 683-84 (Tenn. 1998) (internal citation omitted); see also Reed v. Cracker Barrel Old Country Store, Inc., 133 F.Supp.2d 1055, 1075-76 (M.D. Tenn. 2000).

In order to prevail on a claim of retaliation, a plaintiff must demonstrate that (1) he was engaged in activity protected by Title VII; (2) his actions were known to the defendant; (3) subsequently, the employer took action adverse to the plaintiff; and (4) there was a causal connection between the plaintiff's activity and the actions of the defendant. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). In support of its motion, the movant submits that Arendale has failed to establish a causal connection between his filing of an EEOC charge and his treatment at the hands of City officials. By way of response, the Plaintiff suggests that proximity in time between the protected activity and the adverse action may give rise to an inference that a causal connection exists. However, the Court need not analyze this argument, as it finds the Plaintiff's claim inadequate for different reason.

According to the Plaintiff, Lt. Cox retaliated against him on April 15, 2004 after Arendale filed his EEOC charge on February 21, 2004. Thus, he has identified the "adverse action" of the City as Cox's ill treatment of him with respect to permitting the retired officer into the hallway area and ordering him to write a memo concerning the incident. Not every employment action disliked by an employee is sufficient to satisfy the adverse action element of the retaliation claim. Rather, an adverse action must be a *materially adverse* change in the terms or conditions of plaintiff's

employment caused by the employer's actions. Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000). Thus, in order to be actionable, the adverse action must be sufficiently severe. See Halloran v. Minn. Old Ne. Agents Ltd. P'ship, 58 F.Supp.2d 831, 841 (W.D. Tenn. 1999).

> A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Bowman, 220 F.3d at 461-62.

De minimis actions are not materially adverse and are not actionable. Id. at 462. In Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996), the Sixth Circuit, in discussing this issue, noted that reassignment, a requirement that an employee sign an agreement with the employer as a condition of promotion, a negative public perception concerning a transfer or a particular job, a transfer to a position with different responsibilities, semantic changes in title, and the bruising of an ego did not, without more, rise to the level of "materially adverse changes" in the terms of employment. Kocsis, 97 F.3d at 885-87. This is true even if the employment action has the effect of making the plaintiff's job more difficult. See id. at 885. Courts in this Circuit have also found that a reprimand or an involuntary transfer, absent loss of pay or benefits, or change in duties, does not constitute a materially adverse change in employment. See Akers v. Alvey, 338 F.3d 491, 498 (6th Cir. 2003); Reid v. Madison County, Tenn., No. 98-5312, 1999 WL 196560, at *2 (6th Cir. Apr. 1, 1999); Halloran, 58 F.Supp.2d at 841. Actions resulting in inconvenience, disruption or offense are not sufficient to be considered adverse employment actions. See Howard v. Bd. of Educ. of Memphis City Sch., 70 F.App'x 272, 280 (6th Cir. 2003). "An employee's subjective impressions

as to the desirability of one position over another are not relevant." Policastro v. Nw. Airlines, 297 F.3d 535, 539 (6th Cir. 2002), reh'g & suggestion for reh'g en banc denied (Oct. 2, 2002). Similarly, "an employee's subjective view about an employment action, without further evidentiary support, may not by itself establish that the decision" was discriminatory. Kinamore v. EPB Elec. Utility, No. 1:00-CV-416, 2002 WL 32059025, at *6 (E.D. Tenn. Apr. 11, 2002), aff'd, 92 F.App'x 197 (6th Cir. 2004).

In this case, there is no evidence that Arendale suffered any loss of benefits or diminished responsibilities. At most, Cox's de minimis action in response to the Plaintiff's permitting someone into an unauthorized area offended Arendale. The Plaintiff's subjective belief, even if correct, that Cox was wrong in his assessment of the situation matters not. Cox's conduct was actionable only if it was materially adverse. Based on the case law, being dressed down by a supervisor and directed to write a memo falls woefully short of the adverse employment action necessary to survive summary judgment. Anti-discrimination legislation is not a "shield against harsh treatment in the work place." Nor does personal animosity equate with discrimination. See McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986), cert. denied sub nom. McCollum v. Tisch, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987). Thus, the Plaintiff's retaliation claims under Title VII and the THRA are DISMISSED.

Finally, the Defendant seeks dismissal of the Plaintiff's claims for punitive damages, as it has been generally held that plaintiffs cannot recover such damages against a municipality. See Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 79, 118 S.Ct. 481, 485, 139 L.Ed.2d 433 (1997) (citing Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)); Chonich v. Wayne County Cmty. Coll., 973 F.2d 1271, 1274 n.3 (6th Cir. 1992), cert. denied, 512

U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994).  As the Plaintiff has advised the Court in his response to the dispositive motion that he relinquishes his claim to punitive damages, the claim is therefore DISMISSED.

Having disposed of the Plaintiffs' claims under federal law, the Court now turns to the remaining state claim--hostile work environment under the THRA.  The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  Absent any remaining federal claims against the City, the Court, in its sound discretion, hereby dismisses without prejudice the Plaintiff's remaining claim against the Defendant under state law.  See Weeks v. Portage County Exec. Offices, 235 F.3d 275, 279-80 (6th Cir. 2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

## CONCLUSION

For the reasons set forth herein, the motion of the Defendant for summary judgment is hereby GRANTED and this matter is DISMISSED in its entirety.  The Clerk of Court is to enter judgment for the Defendant; the Court's Case Manager is directed to remove all settings in this matter from the Court's calendar and any remaining pending motions are DENIED as moot.

IT IS SO ORDERED this 24th day of October, 2006.

                                        s/ J. DANIEL BREEN
                                        UNITED STATES DISTRICT JUDGE